# United States Court of Appeals for the Federal Circuit

2008-1085


DSW, INC.
and DSW SHOE WAREHOUSE, INC.,

Plaintiffs-Appellants,

v.

SHOE PAVILION, INC.,

Defendant-Appellee.

Theodore R. Remaklus, Wood, Herron & Evans, L.L.P., of Cincinnati, Ohio, argued for plaintiffs-appellants.

JoAnna M. Esty, Venable LLP, of Los Angeles, California, argued for defendant-appellee.

Appealed from: United States District Court for the Central District of California

Judge Florence-Marie Cooper

# United States Court of Appeals for the Federal Circuit

2008-1085

DSW, INC.
and DSW SHOE WAREHOUSE, INC.,

Plaintiffs-Appellants,

v.

SHOE PAVILION, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the Central District of California in case no. 2:06-CV-06854, Judge Florence-Marie Cooper.

_____

DECIDED: August 19, 2008

_____

Before MAYER, SCHALL and LINN, Circuit Judges.

MAYER, Circuit Judge.

DSW, Inc. and DSW Shoe Warehouse, Inc. (together "DSW"), appeal the judgment of the United States District Court for the Central District of California, granting summary judgment of non-infringement of U.S. Patent No. 6,948,622 ("'622 patent") in favor of Shoe Pavilion, Inc. ("Shoe Pavilion"), and summary judgment of no liability for damages for past infringement of U.S. Patent No. D 495,172 ("'172 patent") and the '622 patent, also in favor of Shoe Pavilion. DSW Inc. v. Shoe Pavilion, Inc., No. 2:06-CV-06854-FMC-SHx (C.D. Cal. Sept. 25, 2007) ("Summary Judgment Order"). Because the trial court erred by (1) construing claims 4-6 of the '622 patent to include

the track and roller configuration limitation recited in claims 1-3, and (2) misapplying Wine Railway Appliance Co. v. Enterprise Railway Equipment, 297 U.S. 387 (1936), with respect to damages, we vacate and remand.

## Background

DSW owns the '622 patent, which teaches a system and method for storing and displaying a large stock of footwear for customer self-service. DSW also owns the '172 patent, which claims an ornamental design for a combined product display and stacked product container separator. On May 19, 2006, DSW notified Shoe Pavilion that the then-current shoe display design ("First Design") in five of its stores infringed DSW's '622 and '172 patents. Shoe Pavilion responded to the notice, and agreed to modify its First Design to avoid infringement. Within seven months of DSW's notification of infringement, Shoe Pavilion removed all First Design displays from its stores and replaced them with a modified design ("New Design").

On October 27, 2006, DSW filed suit against Shoe Pavilion for patent infringement, alleging that Shoe Pavilion's manufacture and use of its New Design footwear displays in seven of its California stores also infringed claims 4-6 of the '622 patent, and that Shoe Pavilion owed damages for infringement of the '172 and '622 patents by the First Design. Shoe Pavilion moved for summary judgment that its New Design footwear displays did not infringe, or, in the alternative, that the '622 patent is invalid, and that it owed no damages for infringement by the First Design.

With respect to infringement by the New Design, the parties' dispute turned on whether the language in claims 4-6[1] of the '622 patent encompasses only methods of

---

[1] Claim 4 provides:

displaying and storing footwear that contain track and roller mechanisms connecting

display modules to a support base, as described in claims 1-3[2] (the "Track and Roller

A method of displaying and storing footwear, comprising:

> stacking containers of footwear of a first style in a [sic] least one vertical stack, one on top of the other in direct physical contact;
> stacking containers of footwear of a second style in at least one vertical stack, one on top of the other in direct physical contact, said stack of containers of footwear of said second style being located adjacent the stack of containers of footwear of the first style;
> selectively positioning a generally <u>vertically disposed, horizontally movably positionable stack divider</u> between (i) the at least one stack of containers of the first style and (ii) the at least one stack of containers of the second style of footwear;
> displaying a sample of footwear of the first style above the at least one stack of containers of the first style of footwear; and
> displaying a sample of footwear of the second style above the at least one stack of containers of the second style of footwear.

'622 patent col.8 ll.33-53 (emphasis added to highlight the disputed claim term).

<u>Claim 5 provides</u>:

> The method of claim 4, further comprising:

> repositioning the divider to adjust the location of a boundary between the stacks of containers of the first and second styles of footwear.

'622 patent col.8 ll.54-57.

<u>Claim 6 provides</u>:

> The method of claim 4, wherein selectively positioning the horizontally movably positionable divider between the stacks of said first and second styles of footwear comprises variably positionably supporting the divider from a horizontally disposed support arranged generally perpendicular to the divider.

'622 patent col.8 ll.58-63.

[2] <u>Claim 1 provides</u>:

> A footwear display and stack divider module, adapted to be selectively variably

supportably positioned on a module support member which extends in a generally horizontal direction, comprising:

a footwear display configured to support at least one style of footwear and having a rear edge and a lateral edge;

a divider disposed adjacent said lateral edge of said display and extending downwardly from said display, said divider defining a vertical plane; and

at least one module connection element disposed adjacent said rear edge of said display, said module connection element configured to selectively engage the module support member at different horizontal positions therealong;

said vertical plane being generally perpendicular to the horizontal direction of the module support member when the module is supported thereby;

<u>wherein the module support member comprises a track and said module connection element includes at least one roller configured to engage the track to thereby slidably suspend the module therefrom.</u>

'622 patent col.7 ll.24-45 (emphasis added).

<u>Claim 2 provides in relevant part</u>:

A system for displaying and storing footwear, the system comprising:
at least one horizontally extending module support member; and
a plurality of display modules coupled to said module support member . . . .

<u>wherein said module support member comprises a horizontally extending elongated track and each said module connection element includes at least one roller configured to engage said track to thereby slidably suspend said module therefrom with said divider disposed in a generally vertical direction perpendicular to the elongated module support track</u>.

'622 patent col.7 ll.46-67-col.8 ll.1-3 (emphasis added).

<u>Claim 3 provides in relevant part</u>:

A cabinet for displaying and storing footwear, the cabinet comprising:
a base;
at least one vertical support member extending upwardly from said base;
at least one module support member coupled to said vertical support and spaced from said base; and
a plurality of display modules coupled to said module support member . . . .

<u>wherein said module support member comprises a horizontally extending elongated track and each said module connection element includes at least one roller configured to engage said track to slidably suspend a respective module therefrom, with said divider disposed in a generally vertical direction perpendicular to said track</u>.

2008-1085                                                    4

Limitation"). DSW argued that the trial court erred by impermissibly construing claims 4-6 to contain the Track and Roller Limitation, notwithstanding the conspicuous absence of claim language evincing such a limitation. Shoe Pavilion argued that DSW disclaimed from the scope of the '622 patent any apparatus, method or system that does not include a track and roller mechanism in the display module. First, the original application's independent claims, which did not include the Track and Roller Limitation, were rejected as reading on the prior art or as obvious under 35 U.S.C. § 103(a), and were cancelled. Second, the application's dependent claims, already containing, inter alia, the Track and Roller Limitation, were objected to for relying on the rejected independent claims, and were only approved after being amended to read as independent claims. These amended claims issued as independent claims 1-3 of the '622 patent. DSW simultaneously added new application claims 15-21, which issued as claims 4-10 of the '622 patent.

Relying on the specification and the prosecution history, the trial court agreed with Shoe Pavilion that method claims 4-6 were not independent and separately patentable from claims 1-3. Specifically, it found that (1) the examiner's reasons for allowance indicated that the Track and Roller Limitation was the seminal feature distinguishing the '622 patent over the prior art, (2) claims 4-6 would be invalid as indefinite without the limitation, and (3) the specification describes the invention as a *modular* footwear display and storage system, and claims 1-3 recite a footwear display and stack divider *module* connected by a *module* support member containing the Track

'622 patent col.8 ll.4-31 (emphasis added).

and Roller Limitation. The court also noted that the preferred embodiment explicitly includes the Track and Roller Limitation. Accordingly, the court construed claims 4-6 to include a footwear display module with vertically disposed horizontally moveable dividers coextensive with the Track and Roller Limitation described in claims 1-3, and concluded that because Shoe Pavilion's New Design lacked the rolling connection element, it did not infringe the '622 patent. It granted summary judgment of non-infringement in favor of Shoe Pavilion.

With respect to damages, the district court found that DSW was not entitled to any damages as a matter of law, because immediately upon receipt of DSW's notice of infringement of the '172 and '622 patents by the First Design, Shoe Pavilion took reasonable steps and timely removed all of the infringing shoe displays. Citing Wine Railway, the trial court granted summary judgment to Shoe Pavilion and stated that no damages for infringement are recoverable by a plaintiff unless the infringing activity continues after notice is provided to the infringer.

DSW appeals the trial court's Summary Judgment Order with respect to Shoe Pavilion's infringement of the '622 patent by the New Design, and liability for damages for infringement by the First Design. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

<u>Discussion</u>

We review the trial court's grant of summary judgment of non-infringement <u>de novo</u>. <u>Netscape Commc'ns Corp. v. Konrad</u>, 295 F.3d 1315, 1319 (Fed. Cir. 2002). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We address each of DSW's challenges in turn.

*A. Non-infringement*

Infringement occurs when a properly construed claim of an issued patent covers an accused device. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 374 (1996). Claim construction is reviewed de novo on appeal. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).

The district court erroneously imported the Track and Roller Limitation directly recited in claims 1-3 into the generally phrased "vertically disposed, horizontally movably positionable stack divider" language of claims 4-6. First, absent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis. Northern Telecom Ltd. v. Samsung Elecs. Co., 215 F.3d 1281, 1295 (Fed. Cir. 2000) ("The plain and ordinary meaning of claim language controls, unless that meaning renders the claim unclear or is overcome by a special definition that appears in the intrinsic record with reasonable clarity and precision.") (citation omitted); see also Intervet Am., Inc. v. Kee-Vet Labs, Inc., 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("[T]his court has consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention, that limitations appearing in the specification will not be read into claims, and that interpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'" (quoting E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433 (Fed. Cir.

1988))).  On its face, the "horizontally movably positionable stack divider" disputed language in claims 4-6 means that the vertically disposed stack dividers must be capable of being moved into different horizontal positions in the footwear display. Although broad, this claim language is not ambiguous.  We therefore disagree with the trial court's decision to intermingle its validity and construction analyses and as a result read into claims 4-6 the Track and Roller Limitation of claims 1-3.  See Phillips v. AWH Corp., 415 F.3d 1303, 1327 (Fed. Cir. 2005) (en banc) ("[W]e have limited the maxim [of construing a claim to preserve its validity] to cases in which 'the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.'" (quoting Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 911 (Fed. Cir. 2004))).[3]

Second, as the trial court acknowledged, nowhere does the prosecution history show an express disclaimer by DSW over a method of displaying footwear not involving the Track and Roller Limitation.  To the contrary, the examiner allowed claims 4-6 without objection, concluding that the prior art does not teach or suggest a method of displaying at least two footwear styles using the particular stacking of containers and stack dividers recited in independent claim 15 (issued as claim 4).  In contrast, when the examiner allowed amended claims 2, 6, and 9 (issued as claims 1-3), she explained that the prior art does not teach or suggest a footwear display and stack divider containing the Track and Roller Limitation.  Neither the claim language nor the language of the examiner's statement of reasons for allowance indicate that the display method recited in claims 4-6 is constrained by the Track and Roller Limitation.  See Markman,

---

[3] We do not offer a view on whether the proper construction of the claim language renders the method claims at issue obvious.

52 F.3d at 980 ("Although the prosecution history can and should be used to understand the language used in the claims, it too cannot 'enlarge, diminish, or vary' the limitations in the claims.") (citations omitted). The trial court incorrectly inferred that the word "also" from the examiner's statement that "[t]he prior art also does not teach . . . a method of displaying 1st and 2nd footwear styles" implied that the latter-discussed method claims depended on the previously-discussed apparatus claims. Indeed, the examiner's specific reference to claim 15 (issued as claim 4) as "independent" directly refutes such a presumption.

Third, although the preferred embodiment includes a rolling track mechanism, the alternate embodiments include hooks, lips, and peg holes to permit the stack dividers to have horizontally movable positions. Moreover, when claim language is broader than the preferred embodiment, it is well-settled that claims are not to be confined to that embodiment. E.g., Phillips, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

In sum, the trial court did not construe or clarify the meaning of actual words in claims 4-6, but improperly read into them a new limitation not required by the claim language, specification, or prosecution history. Because claims 4-6 are unambiguous, contain limitations other than the disputed claim term, and are directed to a method for using an apparatus, not to its structure or assembly, it was improper for the trial court to import limitations from the apparatus and system claims into the method claims.

Shoe Pavilion concedes that its New Design includes storage and display of vertically stacked boxes of footwear, separated by vertically disposed dividers that may

be selectively positioned through use of a clip on a track. On remand, the trial court should compare the properly construed '622 patent claims to the New Design to determine whether it infringes.

## *B. Damages*

The district court misapplied the standard expressed by the Supreme Court in Wine Railway, which held that under the predecessor statute to the notice provision of 35 U.S.C. § 287, a patentee who failed to mark his patented article with the appropriate patent number could only recover damages for infringement occurring after actual notice was provided the infringer. Wine Ry., 297 U.S. at 393-94. This court has applied Wine Railway in the current context of Section 287. Tex. Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1219 (Fed. Cir. 2002). The purpose of the notice requirement is to provide "protection against deception by unmarked patented articles." Wine Ry., 297 U.S. at 398. The idea is to prevent innocent infringement. Motorola, Inc. v. United States, 729 F.2d 765, 772 (Fed. Cir. 1984).

Wine Railway provides no support for the trial court's summary judgment on damages. The issue here is whether Shoe Pavilion is liable for damages to DSW for infringement occurring *subsequent* to receipt of actual notice, and Wine Railway flatly states that a patentee may indeed recover damages for infringement that continues after actual notice is provided. Wine Ry., 297 U.S. at 393-94. Without a doubt, the law offers an infringer no exception to liability for the time it takes to terminate infringing activities, no matter how expeditious and reasonable its efforts. See In re Seagate Tech., Inc., 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc) ("Because patent infringement is a strict liability offense, the nature of the offense is only relevant in

determining whether enhanced damages are warranted."). The trial court therefore erred in concluding that Shoe Pavilion's reasonable steps and good faith efforts to bring its infringing activity to a timely end equated to an immediate cessation. Thus, if the patents at issue are valid, damages are owed on the design for the 6-7 months of continued infringement while Shoe Pavilion phased out use of the displays in its stores.

## Conclusion

Accordingly, the judgment of the United States District Court for the Central District of California is vacated, and the case is remanded for further proceedings in accordance with this opinion.

## Costs

No costs.

## VACATE AND REMAND